FILED 7 MAY '24 11:11USDC-ORP

**Garrett Wright**, OSB No. 163184
garrett.wright@lasoregon.org
**LEGAL AID SERVICES OF OREGON**
520 SW Sixth Ave, Suite 700
Portland, OR 97204
Phone (503) 224-4086

*Attorneys for [UNDER SEAL]*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **[UNDER SEAL]**, <br><br> Plaintiff, <br><br> v. <br><br> **[UNDER SEAL]**, <br><br> Defendant, | **FILED UNDER SEAL** <br><br> Civil Action No. 3:24-CV-761-AR <br><br> **COMPLAINT** <br><br> False Claims Act (31 U.S.C. § 3729 *et seq*); Oregon Fair Housing Act (ORS 659A.421(2)) <br><br> **REQUEST FOR JURY TRIAL** |

**FILED IN CAMERA AND UNDER SEAL**
*Pursuant to 31 U.S.C. Section 3730(b)(2)*

1 – COMPLAINT

FILED 7 MAY '24 11:11USDC-ORP

**Garrett Wright**, OSB No. 163184
garrett.wright@lasoregon.org
**LEGAL AID SERVICES OF OREGON**
520 SW Sixth Ave, Suite 700
Portland, OR 97204
Phone (503) 224-4086

*Attorneys for Plaintiff Sharonda Wilson*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA *ex rel.* SHARONDA WILSON,**<br><br>Plaintiff,<br><br>v.<br><br>**MACKENNZI CHAPEL,**<br><br>Defendant, | **FILED UNDER SEAL**<br><br>Civil Action No. 3:24-cv-761-AR<br><br>**COMPLAINT**<br><br>False Claims Act (31 U.S.C. § 3729 *et seq*); Oregon Fair Housing Act (ORS 659A.421(2))<br><br>**REQUEST FOR JURY TRIAL** |

I.

## INTRODUCTION

This action is brought under the False Claims Act, 31 U.S.C. 3729 *et seq. Qui Tam* Plaintiff Sharonda Wilson rents a residential dwelling unit from Defendant Mackennzi Chapel pursuant to the U.S. Department of Housing and Urban Development (hereinafter "HUD")

2 – COMPLAINT

Section 8 Housing Choice Voucher program.

Defendant violated the law by making false claims and representations concerning the collection of unauthorized rent payments from Plaintiff in excess of the amount of rent approved and paid by HUD on her behalf. Defendants also violated the Oregon Fair Housing Act by discriminating against Plaintiff on the basis of her lawful source of income.

Plaintiff seeks a statutory share of any damages paid to the United States under the False Claims Act, as well as costs and reasonable attorney fees. The United States shall seek all remedies available under the False Claims Act. Plaintiff also seeks statutory damages under the Oregon Fair Housing Act.

## II.

## JURISDICTION AND VENUE

1.      This court has jurisdiction over the federal claim pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

2.      The court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3.      Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant's unlawful acts were committed in the State of Oregon.

4.      Upon information and belief, the facts and circumstances of Defendant's violations of the federal False Claims Act have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or General Accounting Office or Auditor General's report, hearing, audit, or investigation, or in the news media.

5.      The Relator, as the phrase is used in the False Claims Act, is the original source of information upon which this Complaint is based, and they provided disclosures of the FCA allegations of this Complaint to the United States prior to filing.

## III.

## PARTIES

6. *Qui Tam* Relator Sharonda Wilson ("Plaintiff") brings this action on her own behalf and on behalf of the United States of America to recover civil damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*. Plaintiff is a residential tenant at 14539 SE Center Street, Portland, Oregon (hereinafter "Premises"). Plaintiff is a resident of Multnomah County, Oregon. Ms. Wilson moved into the rental unit on or around August 2020. At all times relevant to this complaint, Plaintiff was an HCV voucher recipient; thus, Plaintiff's tenancy was subsidized by the Federal Government and subject to Department of Housing and Urban Development regulations and all applicable Federal law.

7. Plaintiff United States of America is *ex rel.* Sharonda Wilson.

8. Defendant Mackennzi Chapel is a natural person who owns and is the landlord of the residential property located at 14539 SE Center Street, Portland, Oregon in Multnomah County. Defendant held an ownership interest in the Residence and in payments under the HAP Contract for all or a portion of the times relevant to this action.

## IV.

## FACTUAL ALLEGATIONS

9. The Section 8 Tenant Based Housing Choice Voucher Program (hereinafter "Section 8 Program") was authorized by Congress in 1974 through the Housing and Community Development Act of 1974 (Pub.L. 93-383, 88 Stat. 633, enacted August 22, 1974), which amended the United States Housing Act of 1937 (Pub.L. 75-412, 50 Stat. 888, enacted September 1, 1937), as amended, 42 U.S.C. § 1437f. The United States Department of Housing

and Urban Development (hereinafter "HUD") has promulgated regulations for the Section 8 Program requirements. 24 C.F.R. § 982.2.

10. The federal government instituted the Section 8 Program to obtain decent, affordable rental housing for low-income families. 42 U.S.C. § 1437f(a); 24 C.F.R. § 982.1(a).

11. Public housing agencies (hereinafter "PHAs") administer the Section 8 Program. 42 U.S.C. § 1437a(b)(6)(B)(i); 24 C.F.R. § 982.1(a). PHAs are created at the directive of Congress. In Oregon, PHAs are created by state statute. ORS 456.075. Home Forward (formerly the Housing Authority of Portland) is the PHA for Multnomah County.

12. HUD enters into annual contribution contracts with PHAs, including Home Forward, to provide housing assistance payments to landlords on behalf of eligible low-income families through the Section 8 Program. 42 U.S.C. § 1437f(o); 24 C.F.R. § 982.151.

13. Once accepted into the Section 8 Program, a low-income family locates a suitable rental unit in the private market. If the low-income family finds a suitable rental unit and the landlord is willing to lease the unit under the Section 8 Program, the tenant then requests PHA approval of the tenancy. 24 CFR § 982.302.

14. A PHA may not approve a tenancy unless it meets certain eligibility requirements. 24 C.F.R. § 982.305. One of the eligibility requirements is that the total monthly rent to the owner must be reasonable. 24 C.F.R. § 982.305(a)(4). The PHA determines the reasonable rent to be paid to a landlord in comparison with rents charged for comparable residential properties in the private, unassisted local market. 42 U.S.C. § 1437f(o)(10)(A); 24 C.F.R. § 982.507(b).

15. If the PHA determines that the rent for the unit is not reasonable, the PHA shall not make housing assistance payments to the owner with respect to that unit. 42 U.S.C. § 1437f(o)(10)(B); 24 C.F.R. § 982.507(a)(1). However, if the PHA determines that the rent requested by the owner

is not reasonable, a PHA may negotiate a lower monthly rent with the landlord. 42 U.S.C. § 1437f(o)(10)(B).

16.     If the rental unit is approved, the PHA then enters into a HUD-approved contract called a Housing Assistance Payment Contract (hereinafter "HAPC") with the landlord. 42 U.S.C. § 1437f(o)(7).

17.     The HAPC outlines the total monthly rent to be paid to the landlord as approved by the PHA. 24 C.F.R. § 982.451(b). The HAPC also outlines the amount of the monthly housing assistance payments paid by the PHA directly to the landlord on behalf of eligible tenant which is calculated in accordance with HUD regulations and other requirements. 24 C.F.R. § 982.451(b)(1).

18.     The low-income family pays the difference between the monthly housing assistance payment and the total monthly rent to the landlord. 24 C.F.R. § 982.451(b)(4)(i). The tenant's share of the monthly rent is typically 30% of their adjusted income. 42 U.S.C. § 1437f(o)(2)(A).

19.     The HAPC prohibits the landlord from demanding or accepting any rent payments from the tenant in excess of the total monthly rent amount. HUD-52641, Part B (04/2015) ¶ 8(d); 24 C.F.R. § 982.451(b)(4).

20.     The HAPC requires that the rent to owner may at no time exceed the reasonable rent for the unit as approved by the PHA in accordance with HUD requirements. HUD-52641, Part B (04/2015) ¶ 6(a); 24 C.F.R. § 982.451(b)(1).

21.     In addition to the HAPC, the landlord and tenant sign a lease agreement, which must be approved by the PHA. 24 C.F.R. § 982.308.

22.     Plaintiff originally received a Section 8 Voucher from Home Forward in June 2008.

23. After viewing the residential property located at 14539 SE Center Street, Portland, Oregon, Plaintiff spoke with Defendant about renting the Premises.

24. In June 2022, Defendant initially executed a year-long rental agreement with Plaintiff for the Premises, which included a monthly rent of $2,275. That rental agreement was executed on June 20, 2020.

25. Plaintiff subsequently submitted a Request for Tenancy Approval to Home Forward so that she could utilize her Section 8 Housing Choice Voucher for the Premises.

26. Defendant explicitly requested permission from Home Forward to charge a rent of $2,775 and Home Forward denied the request because the proposed rent exceeded Home Forward's "rent reasonableness" and "affordability" tests. Defendant made that request via email to Shaun Cox at Home Forward on or about July 24, 2020. Home Forward denied the request on July 27, 2020. On July 29, 2020, Defendant confirmed via email to Home Forward that she would lower the rent to $1,897.

27. Following approval by Home Forward, Plaintiff entered into a superseding year-long rental agreement with Defendant for the Premises. The rental agreement was dated September 9, 2020 and the tenancy commenced on September 1, 2020. The rental agreement set the rent at $1,897 per month. The agreement included a tenancy addendum prepared by Home Forward that also stated that the total monthly rent to Defendant was $1897, with Plaintiff paying $237 and Home Forward paying $1660. Plaintiff actually began her occupancy of the Premises in August 2020.

28. On September 21, 2020, Defendant emailed Home Forward a copy of the new rental agreement. On September 22, 2020, Shaun Cox at Home Forward emailed Defendant and

informed her that she would have to also review and sign the HAPC. Defendant signed the HAPC on September 24, 2020 and Home Forward signed the HAPC on October 6, 2020.

29.     The HAPC stated that the total monthly rent for the rental unit was $1,897. The HAPC provided that the monthly housing assistance payment to be paid by Home Forward to Defendants was $1,660. This meant that Plaintiff was to pay only $237 per month to Defendant, which was the difference between the total rent and the housing assistance payment.

30.     By signing the HAPC, Defendants agreed that endorsement of a Home Forward check was certification that, except for Home Forward and any tenant rent provided for in the HAPC, "the owner has not received and will not receive any payments or other consideration (from the Family, the PHA, HUD or any other public or private source) as rent for the Contract Unit." HUD-52641, Part B (04/2015) ¶ 8(d).

31.     On or about January 27, 2023, Home Forward notifed Plaintiff and Defendant that Plaintiff's portion of the monthly rent was being reduced to $32. This notice informed the parties that Home Forward's share of the rent would increase to $1,865 per month. The notice also again reminded Defendant that the total rent to her was only $1,897 per month.

32.     Upon information and belief, Home Forward made housing assistance payments in the amount of $1,660 each month to Defendant since the commencement of the lease agreement through December 31, 2022.

33.     Upon information and belief, Home Forward made housing assistance payments in the amount of $1,865 each month to Defendant from January 1, 2023 through the present.

34.     For many of the months during August 2020 through December 2022, Plaintiff paid to Defendant $615 per month instead of $237 per month, resulting in overpayments of at least

$5,235. For the months when Plaintiff was unable to pay the additional rent of $378 per month during this period, various rental assistance agencies made the payments on Plaintiff's behalf.

35.  Plaintiff paid an additional $583 beyond her Home Forward approved portion of the rent in January 2023.

36.  From February 2023 through the present, Plaintiff paid to Defendant $32 per month.

37.  Defendant never obtained approval from Home Forward for a contract rent of $2,275.

38.  Plaintiff paid these additional amounts beyond her Home Forward approved portion of the rent each month from August 2020 through January 2023, until she was informed by Home Forward that it was unlawful for Defendant to charge the higher rent without Home Forward approval.

39.  Home Forward never approved an increase in the rent, nor authorized Defendant to charge or collect rent in excess of $237 per month from Plaintiff from August 2020 through December 31, 2022. In so doing, Defendant violated contractual and regulatory certifications and conditions required for the receipt of federal funds.

40.  Home Forward never approved an increase in the rent, nor authorized Defendant to charge or collect rent in excess of $32 per month from Plaintiff from January 2023 to the present.

41.  From August 2020 through January 31, 2023 Plaintiff paid a total of at least $5,773 in excess rent to Defendant beyond the amount approved by Home Forward.

42.  From November 2020 through March 2021, Multnomah County paid at least a total of $1,890 in excess rent to Defendant beyond the amount approved by Home Forward. This amount was paid as rental assistance during months that Plaintiff experienced difficulty with paying both her lawful share of the rent and the $237 illegal monthly overcharge.

43. From January 2022 through May 2020, Home Forward paid at least a total of $1,890 in excess rent to Defendant beyond the amount approved by Home Forward. Similar to the rental assistance paid by Multnomah County in 2020 and 2021, this amount was paid as rental assistance during months that Plaintiff experienced difficulty with paying both her lawful share of the rent and the $237 illegal monthly overcharge.

44. On or about August 19, 2022, Defendant issued a termination notice to Plaintiff. The notice demanded that Plaintiff pay $2,275 in alleged rent arrears or otherwise be evicted from her home. This amount included the illegal monthly overpayment amounts.

45. After receiving the termination notice, Plaintiff obtained an attorney (Beatrice Roger at the Oregon Health Justice Center) who responded on her behalf to the notice. On or about August 24, 2022, Ms. Roger sent a letter to Defendant that stated that the amount demanded in the termination notice was inaccurate and that Home Forward had consistently paid its $1,660 share of Plaintiff's rent each month.

46. On August 30, 2022, Defendant's attorney Cameron Green at Clark Law and Associates, LLC sent a letter to Plaintiff's attorney which again falsely stated that the monthly rent for July and August was $2275.

47. In February 2023, Defendant issued two termination notices to Plaintiff, again demanding the payment of $2275 for February 2023 rent.

48. Despite the August 24, 2022 letter from Ms. Rogers to Defendant, the Defendant continued to charge the illegal monthly side payments until Defendant finally ceased her demands in February 2023.

49.     Defendant knowingly made false claims and representations, and knowingly violated material policies and conditions laid out in the HAPC she had signed in order to continue to participate in and receive federal funding in the form of Housing Choice Voucher payments.

50.     In July 2023, Defendant belated tendered a payment of $4,914 to Plaintiff as a purported refund of some of the overcharges.

51.     In November 2023, Defendant belatedly tendered a payment of $583 to Plaintiff as a purported additional refund of some of the overcharges.

52.     Plaintiff has not yet deposited either of the two payments from Defendant.

53.     Defendant has still not refunded at least $321 in overpayments.

54.     Upon information and belief, Defendant may have tendered overpayments made by various rental assistance agencies to Defendant back to said agencies.

55.     Defendant's actions violated the False Claims Act. Due to Defendant's violations, Plaintiff seeks a statutory share of the civil penalties and treble actual damages, as well as costs and reasonable attorney's fees pursuant to 31 U.S.C. § 3729 *et seq.*

56.     In addition, Defendant engaged in unlawful source of income discrimination in violation of the Oregon Fair Housing Act, for which Plaintiff seeks compensatory damages and attorney fees and costs.

V.

### FIRST CLAIM FOR RELIEF

**(False Claims Act, 31 U.S.C. § 3729)**

57.     Plaintiff incorporates paragraphs 9 - 56 by reference.

58.     Defendant knowingly violated the False Claims Act, 31 U.S.C. § 3729 *et. seq.* by endorsing and presenting for payment thirty (30) separate assistance payments checks from

Home Forward, while receiving side rent payments from Plaintiff, in excess of the amount authorized by the HAPC.

59. Defendant knowingly made, used, and/or caused to be made or used false statements or records, including false certifications and/or representations of compliance with the Department of Housing and Urban Development's regulations pertaining to the HCV Program in violation of 31 U.S.C. § 3729(a)(1)(B).

60. Defendant signed documents expressly agreeing not to charge for rent, utilities, services or fees amounts in excess of the total contract rent price, and expressly agreed not charge Plaintiff above the amount expressly authorized by Home Forward and the HAP Contract. Defendant had actual knowledge that to charge rent in excess of the contract price would result in the Government's terminating and/or rescinding payments under the HAP Contract.

61. Defendant's endorsement and presentment of each assistance payment check, while knowingly receiving excess payments from Plaintiff, constitutes a separate false claim or representation against the United States (*i.e.* that Defendant did not receive any other consideration for the rent premises each month as set forth in the HAPC).

62. Defendant's promise to the Government to not charge or accept money or other consideration from Plaintiff in excess of those approved by the local housing authority was material to the Government's decision to pay subsidy payments to Defendant as the Government would not have paid subsidy payments to Defendant in the absence of such a promise.

63. Defendant submitted the false claims with scienter as that term is used in the False Claims Act and with knowledge and the subjective belief that defendant's claims were false; in deliberate indifference to the truth or falsity of the information submitted; or with reckless disregard to the truth or falsity of the information submitted.

64.     The United States of America suffered damages as a result of the violations of the False Claims Act, because the housing assistance payments, which HUD disbursed to Home Forward for payment to Defendant under the Section 8 Program on behalf of Plaintiff would not have been paid to Defendant absent the false claims and representations.

65.     The United States sustained damages equal to all payments made to Defendant pursuant to the Section 8 Program, equaling housing assistance payments of $50,005, which is the money that the United States paid to Defendant that would not have been dispersed had HUD been aware of the Defendants' violations of HAP Contract. Defendant is liable for three times the amount of damages that the United States suffered as a result of Defendant's actions, or $150,015.

66.     Each instance for which Defendant endorsed and presented a federally funded subsidy payment constitutes a separate false claim or representation against the United States within the meaning of 31 U.S.C. § 3729(a)(1).

67.     Pursuant to authority granted under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, 28 U.S.C. § 2461, the U.S. Department of Justice issued interim final rules increasing the mandatory FCA penalties of $5,500 to $11,000 to the minimum penalty of $13,946 and maximum penalty of $27,894, per violation, for penalties assessed after February 12, 2024. 28 C.F.R. 85.5(a), Table 1.

68.     If the United States proceeds with this action, Plaintiff is entitled to at least 15% but not more than 25% of the proceeds per 31 U.S.C. § 3730(d)(1); If the United States does not proceed with this action and Plaintiff proceeds on the government's behalf, Plaintiff is entitled to not less than 25% and not more than 30% of the proceeds of this action. 31 U.S.C. Section 3730(d)(2).

69. Defendant is responsible for the costs of this action under 31 U.S.C. § 3729(a)(3), and for Plaintiff's reasonable attorneys' fees, costs and expenses pursuant to 31 U.S.C. § 3730(d).

## VI.

## SECOND CLAIM FOR RELIEF

### (Discrimination on the Basis of Source of Income ORS 659A.421(2))

70. Plaintiff incorporates paragraph 9 - 56 by reference.

71. Defendant violated ORS 659A.421 by using Plaintiff's source of income as a means to financially exploit Plaintiff.

72. Defendant discriminated against Plaintiff based on her source of income by misleading Plaintiff into believing that the original August 2020 rental agreement amount of $2,275 was the lawful contract rent, when in fact Defendant knew that she could not charge a contract rent that exceeded $1,897.

73. Defendant took advantage of Plaintiff's vulnerable status as a Housing Choice Voucher recipient to exploit her by charging Plaintiff a rent that exceeded the lawful rent for the Premises.

74. Defendant discriminated against Plaintiff on the basis of her source of income thereby violating ORS 659A.421. As a result of Defendant's conduct, Plaintiff was caused economic and non-economic damages in an amount to be proven at trial, including mental harm, and is entitled to recover damages pursuant to ORS 659A.885.

75. Plaintiff has retained legal counsel to prosecute her claim and is entitled to reasonable attorneys' fees and costs incurred pursuant to ORS 659A.885(1).

## IX. JURY DEMAND

76. Plaintiff requests a trial by jury in this action on each and every one of her damages

claims.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the United States of America respectfully request the following relief:

1. A finding that the Defendant violated the False Claims Act and is liable to the United States of America.

2. An Assessment a civil penalty against the Defendant for each separate violation of the False Claims Act in the amount of not less than $13,946 or more than $27,894 for each violation.

3. An award to the United States in the amount of three times the amount of damages which it sustained as a result of the Defendant's acts.

4. An award to the United States for the costs of this action under 31 U.S.C. § 3729(a)(3) of the False Claims Act.

5. An award to Plaintiff in the amount of the *qui tam* plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. § 3730(d).

6. An award to Plaintiff in an amount to be determined at trial for Plaintiff's Second Claim for Relief.

7. An award of costs and reasonable attorneys' fees to Plaintiff pursuant to 31 U.S.C. § 3730(d) and ORS 659A.885(1).

8. An award pre and post-judgment interest.

9. An award of any further relief the Court deems just and equitable.

DATED this 7th day of May 2024.

Respectfully submitted,

LEGAL AID SERVICES OF OREGON

By: /s/ Garrett Wright
Garrett Wright, OSB No. 163184

*Of Attorneys for Plaintiff*